## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JASON W. GRUBBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-195-SLR |
| | ) |
| UNIVERSITY OF DELAWARE | ) |
| POLICE DEPARTMENT, et al. | ) |
| | ) |
| Defendants. | ) |

Jason W. Grubbs, Plaintiff, pro se.

Christofer C. Johnson, Esquire, Assistant City Solicitor, City of Wilmington Law Department, Wilmington, Delaware. Attorney for Defendant City of Wilmington.

Joseph C. Handlon, Esquire and Roopa Sabesan, Esquire, Deputy Attorneys General. State of Delaware Department of Justice, Wilmington Delaware. Attorneys for Defendants Kathleen Jennings, Danielle Brennan and Michael Degliobizzi.

Richard D. Abrams, Esquire and Daniel P. Bennett, Esquire of Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, Wilmington, Delaware. Attorneys for Defendants Newark Delaware Police Department, Cpl James Marconi, MS/CPL Greg D'Elia, Sgt Andrew Rubin, George F. Stanko, Thomas J. Buglio, Michael K. Van Campen, City of Newark, Chief Paul M. Tiernan, DC/LT Mark Farrall, Detective James Skinner and DC/LT/CPT Kevin Feeney.

James Darlington Taylor, Jr., Esquire, Allison Jean McCowan, Esquire and Dawn Kurtz Crompton, Esquire, of Saul Ewing LLP, Wilmington, Delaware. Attorneys for University of Delaware Police Department, Sgt. Maier, Chief Patrick Ogden, Detective Jay Protz, Officer Sean Hogan, Sgt. Jeffrey Gates, Emmet M. Robinson, University of Delaware and Udaily.

## MEMORANDUM OPINION

Dated: March  *29* , 2016
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On March 2, 2015, pro se plaintiff Jason W. Grubbs ("plaintiff") filed this action against thirty-five different individuals and entities for claims emanating from his arrest and prosecution. (D.I. 1) Plaintiff alleges civil rights violations pursuant to 42 U.S.C. §§ 1983, 1985 and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. U.S. Const. amend. IV, V, VI, VIII, XIV. Plaintiff also asserts violations of Delaware state law, including claims of false arrest, false imprisonment, assault, battery, defamation, invasion of privacy, negligent publication, gross negligence, malice, negligent infliction of emotional distress, malicious prosecution, abuse of process, conspiracy, and tortious interference. Prior to filing an answer to plaintiff's complaint, defendants moved for dismissal. (D.I. 13, 23, 78, 102, 112, 140, 148, 172)

By order dated November 30, 2015, the Honorable Gregory M. Sleet granted the motions to dismiss filed by defendants Delaware Business Daily, Kennetttimes.com, CBS Broadcasting Inc., Daily News L.P., Delmarva Broadcasting Company, Pacific and Southern Company, Inc., Cora Van Olson, Newark Post Online, and Huffington Post. (D.I. 177) The court found that plaintiff had failed to state viable causes of action under § 1983 on counts one through twelve and fourteen, and that plaintiff had filed the complaint outside Pennsylvania's one-year statute of limitation for the actions of defamation, and negligent, reckless and intentional publication.

On December 16, 2015, the case was reassigned to the undersigned. Pending before the court are fully briefed motions to dismiss filed by: (1) defendants Kathleen

Jennings, Danielle Brennan, Michael Degliobizzi (collectively, "State defendants") (D.I. 140, 141, 150, 153); (2) City of Wilmington (D.I. 23, 24, 118); (3) Newark Delaware Police Department ("NPD"), City of Newark, Cpl James Marconi, MS/CPL Greg D'Elia, Sgt Andrew Rubin, George F. Stanko, Thomas J. Buglio, Michael K. Van Campen, City of Newark, Chief Paul M. Tiernan, DC/Lt. Mark Farrall, Detective James Skinner and DC/LT/Cpt Kevin Feeney (collectively, "Newark defendants") (D.I. 148, 149, 152, 155); (3) University of Delaware Police Department ("UDPD"), Sgt Maier, Chief Patrick Ogden, Detective Jay Protz, Officer Sean Hogan, Sgt Jeffrey Gates, Emmet M. Robinson, University of Delaware ("UD"), and Udaily (collectively, "UD defendants"). (D.I. 172, 173, 175, 178)  Also ripe for review are plaintiff's motions for default judgment and to seal a document. (D.I. 96, 97, 156, 158, 174, 179, 181)  The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a)(1).

## II. BACKGROUND[1]

---

[1] "On a motion to dismiss for failure to state a claim, all allegations in the pleadings must be accepted as true and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations." *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991).

Plaintiff's complaint alleges the following facts.[2] At approximately 10:30 p.m. on

April 20, 2013, plaintiff was jogging on the sidewalk in the area of the University of

Delaware ("UD") campus.[3] (D.I. 1 at ¶ 44, 45, 77) Suddenly, an unmarked police

vehicle drove directly toward plaintiff, sliding to a complete stop.[4] Plaintiff surmised that

the driver of the vehicle was drunk and dangerous. (Id. at ¶¶ 77, 78, 210) Defendants

_____

[2]Throughout his complaint, plaintiff references police reports, an official NPD
news release, photographs and filings made in the underlying criminal action filed by
various officers with NPD and UDPD. Plaintiff also references an official news release
and photographs published by NDP, and filings in the criminal action brought by the
State of Delaware regarding charges emanating from his arrest on April 20, 2013. (See
e.g., D.I. 1 at ¶ 178) Generally, a court considering a motion to dismiss may not
consider matters outside the pleadings. "However, an exception to the general rule is
that a 'document integral to or explicitly relied upon in the complaint' may be considered
'without converting the motion [to dismiss] into one for summary judgment.' In re
Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997)
(citation omitted). A "court may consider an undisputedly authentic document that a
defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based
on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d
1192, 1196 (3d Cri. 1993). Since defendants have attached to their motions to dismiss
documents from the official court proceeding, including plaintiff's plea agreement and
judgment before probation orders (PBJ), as well as the NPD news release,
photographs, and related publications at issue, the court will consider said documents.
Id.; Shelley v. Wilson, 339 Fed. Appx. 136, 137 n.2 (3d Cir. 2009) (documents related to
the underlying criminal action (forming the basis of the 1983 action) were properly
considered by the court because the documents were matters of public record,
referenced in the complaint, and/or integral to plaintiff's allegations).

[3]Parts of plaintiff's version of the events that transpired differs from police reports
and the NPD news release (as well as publications and broadcasts relying on said
police reports and NPD news release). The court will reference the discrepancies only
where essential to its legal analysis.

[4]Officers were responding to a 911 emergency call placed regarding a sexual
assault of two female victims on the UD campus. The victims were walking on Beverly
Road when they observed a male wearing only a shirt and no pants walking on the
opposite side of the road slapping his buttocks. The suspect then fled between two
homes. While the victims did not get a good look at the perpetrator's face, they gave a
general description of the suspect. (D.I. 104 at 4)

Maier[5] and Marconi[6] exited the vehicle, without identifying themselves, and approached plaintiff.[7] Plaintiff was handcuffed, thrown to the ground and placed under arrest. (*Id.* at ¶¶ 98, 77-79, 83-84) While on the ground, an unidentified officer struck, kicked and twisted plaintiff's right ankle, while remarking that plaintiff would not be jogging for a while. After defendants Maier and Marconi assisted plaintiff to his feet, a K-9 dog ran up and bit plaintiff on the medial side of his right thigh, causing pain and injury. (*Id.* at ¶¶ 47, 99, 229) Plaintiff requested, but was not afforded, medical care. (*Id.* at ¶¶ 114-118)

Plaintiff was transported to NPD for processing. (*Id.* at ¶ 48) Many hours after arriving, plaintiff was moved to an interrogation room for questioning by defendants Skinner[8] and Protz.[9] Plaintiff was asked the reason he was jogging on the UD campus and engaging in "sexually deviant activities."[10] (*Id.* at ¶ 50) Questioning stopped after plaintiff requested an attorney. Plaintiff was moved to a holding cell overnight where

---

[5]Defendant Jon Maier is a police officer employed by UDPD.

[6]Defendant James Marconi is a police officer employed by NPD.

[7]Police reports state that, upon seeing the officers, plaintiff fled from the officers, hid, and attempted to scale a wall. (D.I. 1 at ¶¶ 93-94) Plaintiff also resisted arrest. (*Id.* at ¶ 225)

[8]Defendant James Skinner is a detective with the NPD.

[9]Defendant Jay Protz is a detective with the UDPD.

[10]Officers questioned plaintiff about 16 similar incidents in the UD area going back to 2011. In most of the incidents, victims reported seeing a man (either naked or wearing only a shirt) slapping his buttocks as he walked or stood in foliage on the UD campus.

4

the sound of opening and closing cell doors interfered with his ability to sleep. (*Id.* at ¶ 51)

By the next morning, the dog bite and ankle injury were causing plaintiff severe pain. He requested medical treatment. Defendant Skinner denied his request. (*Id.* at ¶ 52) Plaintiff was charged with 18 different criminal offenses and ordered transferred to the UDPD for further processing. (*Id.* at ¶ 53)

Defendant Hogan[11] transported plaintiff to the UDPD detention center. (*Id.* at ¶¶ 55-57) During the drive, defendant Hogan addressed plaintiff as "prisoner" and took him to a fast food restaurant to purchase a "prisoner meal." Defendant Hogan ignored plaintiff's request for medical care for his ankle and dog bite.

Later that morning, additional criminal charges were filed, resulting in 34 counts of conduct spanning the course of about two years on and around the area of UD's campus. Specifically, plaintiff was charged with: two counts of possession of illegal drugs, seven counts of criminal trespass, two counts of lewdness, one count of resisting arrest, and twenty-two counts of indecent exposure. (*Id.* at ¶ 58) Plaintiff was fingerprinted, strip-searched and treated for his injuries. (*Id.* at ¶ 59) Photographs were taken of plaintiff's injuries. Plaintiff was forced to change in an open cell in front of men, women and cameras. (*Id.* at ¶ 61) At approximately 9:00 p.m., plaintiff posted bond and was released. (*Id.* at ¶ 60)

Sometime on April 22, 2013, defendant NPD Chief of Police Paul Tiernan issued a five-page news release detailing the arrest and charges filed against plaintiff. The

_____

[11]Defendant Sean Hogan is an officer with the UDPD.

5

news release details the events and associated charges for multiple incidents of indecent exposure dating back to June 2011, and accuses plaintiff of sexually assaulting "dozens and dozens" of women through indecent exposure, groping, and masturbation. (*Id.* at ¶¶ 166-167) The news release indicated the investigation was continuing and encouraged any additional victims to contact police, while also noting that all defendants are innocent until proven guilty beyond a reasonable doubt. Along with the news release, two photos (purportedly of plaintiff) were published. One of the photos ("field photo") shows a shirtless, bald man either pulling up or down his boxer shorts.

Later in the morning of April 22, 2013, plaintiff was informed by friends and colleagues that there were numerous articles on the Internet, identifying him as the "UD Flasher, Moonlight Derriere, and Naked Man." (*Id.* at ¶¶ 63, 164) Defendant UDaily[12] posted an online article based on the news release. (D.I. 79 ex. 1) A note was posted on defendant UDPD's Facebook page stating that plaintiff had been arrested on multiple counts of indecent exposure and related charges stemming from incidents on campus and in the area. This Facebook posting also included a link to the news release. All publications indicated that police had finally caught their man and the community was now safe. (*Id.* at ¶ 172)

Similar articles soon appeared in over "30 newspapers/online publications," making headlines on major networks across the nation. (*Id.* at ¶¶ 64, 165) The news release was the source of information. The field photo was published with almost every

---

[12]The University of Delaware's daily news publication.

article, identifying plaintiff as the perpetrator.  The stories indicated that the community was safe because police had apprehended the perpetrator.

The intense media coverage continued for approximately one year after plaintiff's arrest as local television stations and Internet websites and blogs reported on the pending criminal trial and published the field photo identifying plaintiff as the perpetrator.  (Id. at ¶¶ 137, 170, 174)  Accompanying the coverage was information for "victim recruitment."  No additional victims came forward to identify plaintiff as the perpetrator.  (Id. at ¶¶ at 65, 126, 170, 174)

Sometime during the investigation, defendants Protz and Skinner visited plaintiff's workplace, seeking certain information and records.  As a result of defendants Skinner and Protz's inquiries and the intense media coverage, plaintiff was terminated from his job.

The criminal trial against plaintiff was postponed five times due to the prosecutor's requests and judge reassignment.  (D.I. 1 at ¶¶ 68, 321)  The prosecutor assigned to the case, defendant Degliobizzi,[13] stated that "up until the date of [plaintiff's] arrest, there was not much evidence."  (Id. at ¶ 142)  Defendant Degliobizzi brought the charges against plaintiff at the behest of his supervisors defendants Brennan[14] and Jennings.[15]  Plaintiff turned down multiple plea deals offered by defendant Degliobizzi. (Id. at ¶ 66)  In March 2014, prior to the commencement of trial, defendant Degliobizzi

_____

[13]Defendant Michael Degliobizzi is a Deputy Attorney General with the Delaware Department of Justice ("DOJ").

[14]Defendant Danielle Brennan is a Deputy Attorney General with the DOJ.

[15]Defendant Kathleen Jennings is the State Prosecutor with the DOJ.

nolle prossed (dismissed) twenty-five of the thirty-four charges against plaintiff. (*Id.* at ¶ 69)

During the prosecution's presentation of evidence at trial, defendant Degliobizzi did not present expert analysis or an expert profiler, relying instead on a "cop's hunch." (*Id.* at ¶¶ 140-141) When questioned by defendant Degliobizzi, the "star witness" identified defendant Protz (who was sitting at counsel table) as the perpetrator, not plaintiff. (*Id.* at ¶¶ 130, 305, 354) Another witness positively identified plaintiff as the perpetrator, but his testimony was impeached as a police report was never filed.

Sometime during the trial, plaintiff entered into plea negotiations and reached an agreement with defendant Degliobizzi, thereby ending the trial.[16] Plaintiff agreed to plead guilty to one count of resisting arrest[17] and no contest to one count of lewdness[18] in exchange for probation before judgment ("PBJ"). Defendant Degliobizzi agreed to not prosecute the remaining counts against plaintiff. (D.I. 141 at ex. C) Plaintiff describes this resolution as a complete exoneration and proof that he was innocent of

_____

[16]Plaintiff avers that he was found not guilty of all charges and that the case against him was dismissed. However, the documents submitted by defendants reflect that there was no verdict rendered. Instead, a plea agreement was reached prior to the end of the trial. (D.I. 1 at ¶¶ at 72, 73)

[17]The PBJ indicates that plaintiff agreed to plead guilty to resisting arrest, a misdemeanor, and was sentenced to placement on Level III PBJ for a period of one year under the supervision of the Department of Correction. (D.I. 141 ex. C)

[18]The PBJ reveals that plaintiff agreed to plead nolo contendere (no contest) to lewdness, a misdemeanor, and was sentenced to placement on Level I PBJ for a period of one year under the supervision of the Department of Correction. (D.I. 141, ex. C) In addition, the following special conditions were ordered against plaintiff: (1) no contact with the City of Newark, UD, as well as seven specifically identified victims; and (2) evaluation for emotional and or psychological problems including sexual offender counseling and following directions for treatment or counseling. (*Id.*)

8

the charged conduct. With only a few months remaining on his probation before judgment term, plaintiff filed the action at bar.

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir.2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009).

First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

9

In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n. 2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64.

Where a plaintiff proceeds pro se, the court must "liberally construe" the complaint and hold it to "less stringent standards than formal pleadings drafter by lawyers." *Erickson,* 551 U.S. at 93-94. Even still, "pro se litigants must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted). Moreover, a pro se litigant "is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thaker v. Tan*, 372 Fed. Appx. 325, 328 (3d Cir. 2010) (citation omitted).

## IV. DISCUSSION

10

## A. Count One - False Arrest

Plaintiff contends that defendants Maier, Marconi, Rubin and D'Elia (collectively, "officer defendants") violated his rights under 42 U.S.C. § 1983 by effecting his arrest without probable cause or reasonable grounds to believe plaintiff had committed an offense (D.I. 1 at ¶ 74-86) Specifically, there was no outstanding sworn "complaint, information, or indictment" pending that gave officer defendants authority to arrest plaintiff and the description provided by the two victims was undisputedly vague and general and did not warrant his arrest.

Generally, § 1983 does not itself create substantive rights, but provides a vehicle for vindicating a violation of a federal right. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (1995). A plaintiff asserting a cause of action under § 1983 must prove two elements: (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. *Berg v. City of Allegheny*, 219 F.3d 261, 286 (3d Cir. 2000). Plaintiff's false arrest claims implicate the Fourth Amendment.

To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish that: (1) there was an arrest; and (2) the arrest was made without probable cause. *James v. City of Wilkes-Barre,* 700 F.3d 675, 680 (3d Cir. 2012). An arrest based on probable cause cannot be the source of a claim for false arrest or false imprisonment. *Groman v. Twp of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995).

Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to

11

believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F. 3d 497, 514 (3d Cir. 2003). In assessing probable cause, the court considers "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

The court finds the record presented does not show that defendants Marconi or Maier lacked probable cause to arrest plaintiff. It is undisputed that a 911 emergency call from two victims was placed, reporting that they had observed a half-naked man slapping his buttocks as he walked along Beverly Road in the area of UD. The victims provided a general description of the suspect and said he fled between two homes. In response to the 911 call, defendants Marconi, Maier, as well as other officers, responded to Beverly Road and the surrounding area. Defendants Marconi and Maier arrived to find plaintiff - matching the description and location provided by the victims - and placed plaintiff under arrest. The court finds these facts are sufficient for a reasonable officer to believe that plaintiff had committed an offense. Coupled with plaintiff's guilty plea for resisting arrest and no contest plea to lewdness, there is adequate probable cause to vitiate the claim for false arrest.

Plaintiff also claims that defendants City of Newark, NPD, Chief Patrick Ogden, Chief Paul M. Tiernan, Stanko, Buglio, Van Campen, Gates, Farrall, Feeney and Robinson are all liable under the doctrine of respondeat superior for unlawful arrest. In order to prevail on a claim under § 1983, plaintiff must assert that the individual defendant had personal involvement in the alleged wrongs, and liability cannot be

predicated solely on the operation of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Viewing the complaint, the court finds that plaintiff alleges no facts indicating any personal involvement by the aforementioned defendants.

With respect to defendants City of Newark, NPD, and City of Wilmington, the court finds that these claims must be dismissed because a municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) show that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury, and (3) show a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Here, there are no allegations of an existing policy or custom sufficiently established to constitute law. Moreover, a municipal department is not a "person," separate from the municipality subject to § 1983 liability. *See Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D. N.J. 2006). Absent any allegation that a custom or policy established by defendants City of Newark, NPD, and City of Wilmington directly caused harm to plaintiff, plaintiff's § 1983 claims cannot stand.[19]

### B. Count Two - False Imprisonment

---

[19]The court will not exercise supplemental jurisdiction over any remaining State law claims against these defendants. *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 174 (3d Cir. 2009).

Plaintiff alleges that defendants Skinner, Protz, and Hogan wrongfully deprived him of his right to liberty without due process of law and his right to equal protection under the law by falsely imprisoning plaintiff for offenses of which he was innocent. To state a claim for false imprisonment, plaintiff must establish that he was arrested without probable cause and was subsequently detained pursuant to that unlawful arrest. *James v. City of Wilkes-Barre*, 700 F.3d at 679-681. As discussed above, plaintiff has not alleged any facts that would support an arrest lacking probable cause. "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 388. Accordingly, plaintiff has failed to plead a claim of false imprisonment as to defendants Skinner, Protz, and Hogan.

Plaintiff asserts that defendants City of Newark, NPD, UDP, Chief Patrick Ogden, Chief Paul M. Tiernan, Stanko, Buglio, Van Campen, Gates, Farrall, Feeney, and Robinson are also liable for false imprisonment on the basis of the doctrine of respondeat superior. Since there are no allegations of personal involvement, these claims are dismissed. *Rizzo v. Goode*, 423 U.S. 362; *Rode v. Dellarciprete*, 845 F.2d at 1207.

## C. Count Three - Excessive Force

Plaintiff contends that defendants Maier, Marconi, Rubin and D'Elia applied excessive force when effecting his arrest and subjected him to cruel and unusual punishment. (D.I. 1 at ¶¶ 90-109) He alleges he was helpless and handcuffed when an unidentified officer struck his ankle and an unidentified K-9 handler released the K-9 that bit his thigh. Plaintiff argues that the defendants used excessive force when

14

responding to a crime involving a minor offense (indecent exposure) and where the victims were at least 20 feet away from the perpetrator. (*Id.* at ¶¶ 92-93) Defendants had no reason to believe plaintiff was dangerous or a threat.

Claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A court should pay close "attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer of others, and whether he is actively resisting arrest, or attempting to evade arrest by flight." *Id.* at 396. Applying this authority to count three, the court finds that plaintiff has sufficiently stated a claim for excessive force against defendants Maier, Marconi, Rubin and D'Elia.[20]

With respect to the other defendants named in this count, the court finds dismissal of the claims is appropriate against defendants City of Newark, NPD, UDP, Chief Ogden, Chief Paul Tiernan, Stanko, Buglio, Van Campen, Gates, Feeney and Robinson are dismissed because no personal involvement is alleged. *See Rode v. Dellacriprete,* 845 F.2d 1195, 1207.

### D. Count Four - Right to be Protected from Harm

Plaintiff asserts that defendants Maier, Marconi, Rubin and D'Elia violated his constitutional rights under the 14th Amendment by failing to protect plaintiff from harm,

---

[20]It is noteworthy that defendants Marconi, Rubin and D'Elia did not move for dismissal of this claim because there are "questions of fact not yet ripe for determination." (D.I. 149 at 1, fn.2)

15

ostensibly by not intervening when an unidentified officer struck plaintiff's ankle and an unidentified K-9 officer allowed the K-9 to bite plaintiff's thigh. "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651. The court finds that plaintiff has pled sufficient facts to support this allegation.

## E. Count Five - Medical Care

In count five, plaintiff contends that defendants Maier, Marconi, Skinner, Protz, and Hogan failed to provide medical assistance for the ankle injury and dog bite. "Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995). Plaintiff has pled sufficient facts for this claim to proceed.

## F. Count Six - Special Relationship Doctrine

Plaintiff claims that defendants Maier, Marconi, Skinner, Protz, Hogan, Rubin, and D'Elia are liable under the "special relationship" doctrine. (D.I. 1 at ¶¶ 119-123) Once arrested, plaintiff claims he had a right to be protected, a right to medical care, and a right not to be subjected to unreasonable force.

Generally, a state actor has no affirmative duty to protect an individual from the acts of a third party. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir.1997)

16

(citations omitted). However, an affirmative duty may arise out of certain special relationships between the State and particular individuals. *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013). For example, when the State holds an individual in custody against his will, the Constitution imposes upon the State a corresponding duty to assume some responsibility for the individuals' safety and general well-being. *Id.* The duty to protect does not emanate from the State's knowledge of the individual's predicament or an expression of intent to assist, but from the restraints the State imposes on the individual's ability to act on his own behalf. *Kingsmill v. Szewcxak*, 117 F. Supp.3d 657, 663-664 (E.D. Pa. 2015). The court finds that plaintiff has pled sufficient facts to proceed with this claim.[21]

### G. Count Seven - Malicious Prosecution

Plaintiff contends that defendants Jennings, Brennan, Degliobizzi, Skinner, and Protz maliciously prosecuted and deprived him of liberty interests to be free from false accusations and a baseless prosecution. (D.I. 1 at ¶ 157) Specifically, plaintiff contends that defendant Degliobizzi, the prosecuting attorney assigned to the case, was ordered by his supervisors (defendants Jennings and Brennan) to file and pursue unsubstantiated charges against plaintiff, despite the lack of evidence and without requesting further investigation by law enforcement. Plaintiff alleges that while prosecuting the case, defendant Degliobizzi wrongfully met privately with police officers, allowed defendant Protz to sit at the prosecution counsel table during trial, corrupted

---

[21]Defendants Marconi, Rubin, Skinner D'Elia have not moved for dismissal of the claims, as they "involve questions of fact not yet ripe for determination." (D.I. 149 at 1, fn. 2)

17

the transcript of the proceedings and contributed to the numerous postponements in the case. The purportedly false charges filed became a source of the information published on the Internet and by media outlets. According to plaintiff, defendants Skinner, Protz, Degliobizzi, Brennan and Jennings orchestrated this alleged improper prosecution for four reasons: (1) to cover-up plaintiff's allegations of excessive force by officers at the time of his arrest; (2) to assure the public that the alleged sexual predator was apprehended and no longer a danger to the community; (3) to protect the true perpetrator; and (4) to "clear the decks of all the sexual assault cases so the UD would have successful admission numbers." (D.I. 1 at ¶ 154)

Generally, "state prosecutors are absolutely immune from liability under § 1983 for actions performed in a [judicial or] quasi-judicial role." *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). This immunity covers acts that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Actions related to a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not protected by absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Whether a prosecutor is entitled to absolute immunity for his/her conduct is contingent upon the nature of the function the prosecutor was performing. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Yarris*, 465 F.3d at 136 (3d Cir. 2006). In determining prosecutorial immunity questions, the court conducts a two part analysis: (1) what conduct forms the basis for the plaintiff's cause of action; and (2) what

18

"function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011).

Applying this authority to the complaint, it is evident that the conduct of defendants Degliobizzi, Jennings, and Brennan implicates prosecutorial functions. First, with respect to plaintiff's contention that the charging document contained false information, the Supreme Court has concluded that the filing and preparation of charges are part of the advocate's function and protected by immunity. *Kalina*, 522 U.S. at 129. The decision to commence prosecution is at the core of a prosecutor's judicial role. *Imbler*, 424 U.S. at 430 -31. A falsely-charged defendant has a remedy through "safeguards built into the judicial system," such as probable cause hearings or dismissal of the charges. *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992).

Similarly, defendants' actions related to trial strategy, investigation, and presentation of evidence and witnesses are intimately related to the judicial phase of the criminal process and protected by absolute immunity. *Henderson v. Fisher*, 631 F.2d 1115, 1120 (3d Cir. 1980). Challenges to any of the legal arguments presented by state defendants is conduct of an advocate and afforded protection. *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir.1994) (citing *Imbler*, 424 U.S. at 430). Although the private meeting between defendant Degliobizzi and police took place outside the courtroom, plaintiff's description of the event does not suggest it was related to anything that was not "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler*, 424 U.S. at 430). Considering this authority against plaintiff's allegations, the court finds that absolute

19

immunity applies because the claims against defendants Degliobizzi, Jennings, and Brennan implicate a prosecutor's advocacy function.

Moreover, plaintiff's claims against defendants Jennings and Brennan fail because they are premised on their roles as supervisory attorneys. *Van de Kamp*, 555 U.S. at 345 (supervisory prosecutors also receive absolute immunity for conduct implicating their advocacy function). In order to prevail on a claim under § 1983, plaintiff must assert that the individual defendant had personal involvement in the alleged wrongs, and liability cannot be predicated solely on the operation of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Viewing the complaint, the court finds that plaintiff alleges no facts indicating any personal involvement by defendants Jennings and Brennan.

With respect to the substantive claim for malicious prosecution against defendants Skinner and Protz, plaintiff must demonstrate:   (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

Plaintiff asserts defendants did not thoroughly investigate the crimes, consult expert witnesses, or study the evidence before filing the baseless charges against him. Relying on defendant Degliobizzi' statement that, "up until the date of the arrest, there wasn't much evidence," plaintiff claims this proves there was nothing to support the charges.  (D.I. 1 at ¶ 142)  This statement, however, demonstrates only that before

20

plaintiff was arrested there was not much evidence. It does not mean that there was insufficient evidence when the charges were filed after plaintiff's arrest. The issue is whether there was probable cause at the time the charges were filed.

Similarly, plaintiff's assertion that his prosecution was based on an unsubstantiated narrative lacking probable cause is a legal conclusion. On a motion to dismiss, "we are not compelled to accept usupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). Plaintiff describes the charges as "completely and utterly wrong" and "improper," yet does not identify the misrepresented facts. D.I. 1 ¶¶ 141, 149) These "naked allegations, without some kind of elaboration, are just more colloquial ways of saying that the charges lacked probable cause." *Gebhart v. Steffen,* 574 Fed. Appx. 156, 159 (3d Cir. 2014).

Moreover, plaintiff cannot establish the second element (favorable termination) of malicious prosecution. The Third Circuit has concluded, that in order to satisfy the favorable termination rule, a plaintiff claiming malicious prosecution must prove actual innocence as an element of his prima facie case. *White v. Brown*, 2010 WL 1740717 (D. Del. 2010). Pleading nolo contendere precludes a claim for malicious prosecution on favorable outcome. *Crock v. Pennsylvania*, 397 Fed. Appx. 747, 750 (3d Cir. 2010). A sentence of probation before judgment is not considered a favorable outcome for purposes of a malicious prosecution claim. *Ferguson v. Town of Dewey Beach*, 2006 WL 1174017 (Del. Super. 2006). Additionally, the fact that charges were nolle prossed

pursuant to the plea agreement is not considered a favorable outcome disposition.
*Pittman v. Metuchen Police Dept.*, 441 Fed. Appx. 826, 829-830 (3d Cir. 2011).

Despite his protestations to the contrary, plaintiff was not exonerated by a not
guilty verdict. The record reflects that plaintiff pled guilty to one count of resisting arrest
and pled no contest to one count of lewdness. (D.I. 141, ex. C) On the same date,
March 24, 2014, plaintiff entered into a PBJ agreement for the charge of resisting arrest
and entered into a PBJ agreement for the charge of lewdness. He was placed on Level
I PBJ for one year. A supplemental order entered with the PBJ set special conditions of
probation which prohibit plaintiff from having contact with the "victims," including the
City of Newark, University of Delaware, seven females, one male and his family. (*Id.* at
ex. C 2-3) The court finds that this record does not substantiate plaintiff's
proclamations of exoneration.

## H. Count Eight - Defamation

Plaintiff avers that all named defendants violated his rights by publishing untrue,
"lengthy and disgustingly descriptive" information and photographs falsely identifying
him as the perpetrator, "accused of assaulting dozen and dozens of women through
indecent exposure, groping and masturbation." (D.I. 1 at ¶ 167) As a result, plaintiff
lost his job and suffered "massive injury to his reputation and spirit." (*Id.* at ¶ 176)

It is undisputed that defamation, standing alone and apart from any other
governmental action, is insufficient to state a claim for relief under 42 U.S.C. § 1983.
*Paul v. Davis*, 424 U.S. 693, 706 (1976). To make out a due process claim for
deprivation of a liberty interest in reputation, a plaintiff must demonstrate a stigma to his

22

reputation plus deprivation of some additional right or interest. *Dee v. Borough of Dunmore*, 549 F. 3d. 225, 233 (3d Cir. 2008). This is known as the "stigma-plus" test. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). To establish stigma, the relevant statements must be both made publicly and false. *Id.* The second or plus requirement pertains to the additional deprivation needed to transform a stigmatizing statement into a § 1983 action. *Id.* "The stigma-plus test requires that the defamation be accompanied by an injury directly caused by the government, rather than an injury caused by the act of some third party." *D&D Associates, Inc. v. Board of Educ. Of North Plainfield*, 552 Fed. Appx. 110, 114 (3d Cir. 2014).

Applying this authority to plaintiff's allegations, the court finds that this claim cannot succeed because the statements were not false as plaintiff was arrested on the enumerated charges. Accordingly, the court does not reach the second element of "stigma plus" analysis.

## I. Counts Nine through Twelve

Plaintiff groups these claims together because they are similar and involve the same circumstances, to wit, that defendants Newark, NPD, UDP, Chief Ogden, Chief Tiernan, Stanko, Buglio, Van Campen, Gates, Feeney, Farrall, and Robinson failed to discipline or investigate defendant Protz even though a victim, under oath, identified him as the perpetrator. (*Id.* at ¶¶ 194-195) More specifically, plaintiff avers that defendants failed to instruct, supervise, control, and discipline on a continuing basis subordinate police officers for: unlawful and malicious harassment; unlawful and malicous prosecution; conspiracy to violate rights and otherwise depriving citizens of

23

their rights. These claims are clearly based on supervisory conduct, devoid of any

specific personal involvement, and are appropriate for dismissal. *Dellarciprete*, 845

F.2d at 1195.

## J. Counts Thirteen and Fourteen - Conspiracy under § 1983 and 1985(3)

With respect to the conspiracy claims, plaintiff asserts that all named defendants

engaged in a conspiracy as evidenced by the following overt acts:

> (1) the prosecution charged 34 counts and they were all dismissed;
> (2) charging plaintiff with crimes they knew or should have known
> were false; (3) covering up excessive force, 'strike and bite,' by
> not recording it in any/all police reports; (4) calling 'plant,' a man, to
> testify as to plaintiff's guilt when all the crimes were allegedly
> committed against women. . . no women witnesses, just one
> man; (5) police, prosecutors, and media acted as one entity,
> pushing forth a demented, false narrative to humiliate and
> intimidate plaintiff in order to try and 'clear the decks' of
> sexual assault charges. Coverage was not 'full, accurate
> and fair' and it all happened less than 36 hours after arrest. This
> must have been coordinated; (6) defendant Degliobizzi at the
> criminal trial called the police officers into a conference room,
> there he conferred with the police instead of victims; (7) there
> was not investigation into defendant Protz, even after a victim,
> under oath, identified him as the perpetrator; and (8) plaintiff,
> to this day, is not able to listen to the audio transcript of his trial.
> The written transcript is missing 'certain exchanges' between
> counsel and witnesses. The fact that statements were omitted
> from the written transcript demonstrates a deep-seated conspiracy
> to hide the truth.

(D.I. 1 at ¶ 203) Plaintiff submits that the aforementioned acts implicate violations of §§

1983 and 1985(3).

To prevail on a conspiracy claim under § 1983, a plaintiff must demonstrate that

persons acting under color of State law conspired to deprive him of a federally

protected right." *White v. Brown,* 408 Fed. Appx. 595, 599 (3d Cir. 2010); *Gibbs v.*

24

*Hartsky*, 2004 WL 1328278, at \*3 (D. Del. 2004). Moreover, a conspiracy claim

requires more than mere conjecture as to an agreement. *Great W. Mining & Mineral*

*Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178- 179 (3d Cir. 2010). Plaintiff must

provide facts establishing the time of the agreement, the parties involved, the duration

of the agreement and the object of the agreement. *Id.*

Having concluded that plaintiff's claims for malicious prosecution and defamation

fail, plaintiff's conspiracy claim under § 1983 fails because of the absence of an

underlying constitutional violation. Plaintiff's claim under § 1985(3) must be dismissed

because plaintiff has not alleged that he was discriminated against because of race or

other class-based factor subject to protection. *Lake v. Arnold*, 112 F.3d 682, 685 (3d

Cir. 1997).

## K. Supplemental Jurisdiction

Having concluded that dismissal of the federal claims against defendants City of

Wilmington, Jennings, Brennan, Degliobizzi, NPD, Stanko, Buglio, Van Campen, City of

Newark, Tiernan, Farrall, Feeney, UDPD, Odgen, Gates, Robinson, UD, and Udaily is

appropriate, the court declines to exercise supplemental jurisdiction over the remaining

State law claims asserted against the aforementioned defendants. 28 U.S.C. §

1367(c)(3). The "district court may decline to exercise supplemental jurisdiction over a

claim if 'the district court has dismissed all claims over which it has original jurisdiction."

*Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 174 (3d Cir. 2009). "If it appears that the

federal claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6), then the court

should ordinarily refrain from exercising jurisdiction in the absence of extraordinary

25

circumstances." *Cito v. Bridewater Twp. Police Dep't.*, 892 F.2d 23, 25-26 (3d Cir. 1989). There are not extraordinary circumstances at bar that require the court to entertain the State law claims asserted against the aforementioned defendants. Since the claims for excessive force, medical care and special relationship are not dismissed, the court turns to the State common law claims asserted against the remaining defendants, Maier, Marconi, Rubin, D'Elia, Skinner, Protz, and Hogan,

### L. Counts Fifteen, Sixteen and Thirty-Two

In counts fifteen, sixteen, and thirty-two, plaintiff contends that he was falsely arrested, falsely imprisoned, and maliciously prosecuted in violation of Delaware law. Like the allegations found in the federal claim premised on the same legal theories, plaintiff again avers that there was no probable cause to support his arrest or imprisonment.

"[T]he tort of false arrest differs from the tort of false imprisonment only in terminology." *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 368 (2013) (citations omitted). "False imprisonment or false arrest is generally defined as the deprivation of the liberty of another without his consent and without legal justification. Legal justification is held to be the equivalent of legal authority and judged by the principles applicable to the law of arrest." *Id.* Pursuant to Delaware law, an arrest by a police officer without a warrant for a misdemeanor is lawful "whenever the officer has reasonable ground to believe that the person arrested has committed a misdemeanor [o]ut of the officer's presence and within the State for any misdemeanor occurring on school property." 11 Del. C. § 1904(a)(6). Given plaintiff's arrest on UD grounds,

26

dismissal of both claims against defendants Maier, Marconi, Rubin, D'Elia, Skinner, Protz, and Hogan is warranted.[22]

## M. Count Seventeen - Assault and Battery

In count seventeen, plaintiff alleges conduct by defendants Maier, Marconi, Rubin, and D'Elia caused injury to his ankle and thigh. "To bring a successful claim for assault in Delaware, plaintiff must prove that a specific defendant intentionally caused plaintiff to be in fear of an immediate harmful or offensive contact, without plaintiff's consent." *Smith v. Delaware State Police*, 2014 WL 3360173, at \*6 (Del. Super. 2014). "The tort of battery is 'the intentional, unpermitted contact upon the person of another which is harmful or offensive.'" *Hunt ex rel. DeSombre*, 69 A.3d at 368. Under 11 Del. Code § 467, the use of force is justifiable when the defendant is "making an arrest or assisting in making an arrest and believes that such force is immediately necessary to effect the arrest." 11 Del. C. § 467(a)(1). The court finds plaintiff has sufficiently stated this claim to preclude dismissal at this time.[23]

## N. Counts Eighteen to Twenty-One - Defamation

Plaintiff avers that defendants Skinner and Protz were the source of all information published in the media. (D.I. 1 at ¶ 261) By failing to adequately investigate the charges, defendants acted with "gross and wanton disregard for the

---

[22]Alternatively, the court's finding regarding the absence of probable cause with respect to the federal claims for false arrest, false imprisonment, and malicious prosecution applies with equal force for dismissal of the same theories under State law.

[23]Defendants Marconi, Rubin, and D'Elia do not move for dismissal of this claim because there are "questions of fact not yet ripe for determination." (D.I. 149 at 1, fn. 2)

truth." Plaintiff references "[m]ost publications and stories featured the alleged sexual assault the night of plaintiff's arrest" and "were part of the counts that were nolle prossed right before the criminal trial." (*Id.* at ¶ 242)

To state a cause of action for defamation under Delaware law, a plaintiff must plead five elements: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury. *Wright v. Pepsi Cola Co.,* 243 F. Supp.2d 117, 124 (D. Del. 2003). Libel is written defamation and slander is oral defamation. *Stiner v. Univ. of Delaware*, 243 F. Supp.2d 106, 115 (D. Del. 2003) (citing *Spence v. Funk*, 396 A.2d 967, 970 (1978)). Truth is an absolute defense. *DeBonaventura v. Nationwide Mutual Ins. Co.,* 428 A. 2d 1151, 1155 (1981). If the alleged defamatory statement is demonstrated not to be false, it is unnecessary to consider any of the additional factors. *Id.*

Plaintiff charges defendants Skinner and Protz as the source of the information published by the media. He does not, however, identify the exact comments or specific publication attributable to defendant Skinner or Protz. Although plaintiff indicates the materials will be provided, there is nothing of record for the court to review.[24] (D.I. 1 at ¶ 245) Accordingly, absent the materials, the court cannot evaluate counts eighteen, nineteen, twenty and twenty-one, and dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564.

## O. Counts Twenty-Two and Twenty-Three

[24]Plaintiff suggests at least thirty publications relied on information from defendants Skinner and Protz.

Plaintiff contends that defendants Skinner and Protz invaded his privacy when the NPD press release negligently included information about his private life. (D.I. 1 at ¶¶ 269-279) To establish a claim for improper public disclosure, a plaintiff must show "four elements: (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern. A failure to prove any of these elements is a complete bar to liability." *Espinoza v. Hewlett-Packard Co.,* 2011 WL 941464, at \*7 (Del. Ch. 2011). The court concludes that the NPD press release constitutes "the dissemination of truthful, newsworthy material [that] is not actionable as a publication of private facts." *Id.* Likewise, plaintiff's claim for invasion of privacy fails because the NPD press release reflects a matter of public record and concern. *Barbieri v. News-Journal Co.,* 189 A. 2d 773 (1963).

## P. Counts Twenty-Four to Thirty-One

With respect to counts twenty-four to twenty-six, plaintiff asserts that a person negligently publishes a defamatory communication when a reasonable person under the circumstances would not have published the communication. Plaintiff seeks to hold defendants Skinner and Protz liable, but has failed to present any facts describing their conduct in support of these claims. Although the court is required to construe a pro se plaintiff's allegations broadly, liberal construction does not require the court to credit a pro se plaintiff's bald assertions or legal conclusions. *Morse v. Lower Merion Sch. Dist*. 132 F.3d 902, 906 (3d Cir. 1997). Similarly, plaintiff's claims in counts twenty-seven to

thirty recite the elements of negligence, willful and wanton conduct, and malice without providing specific facts about defendant Skinner or Protz.[25]

Regarding count thirty (actual malice), this claim is an element of a defamation action. Notwithstanding the lack of a separate legal claim, the court finds that plaintiff has not presented facts that defendants Skinner and Protz actually published anything in the first instance, or acted with reckless disregard for the truth or knew of the falsity of the information published. *See Parisi v. Sinclair*, 774 F. Supp. 2d 310, 319 (D. D.C. 2011).

In count thirty-one, plaintiff states that all defendants are guilty of "outrageous" conduct causing severe emotional distress, which is "tantamount to an extreme form of torture." Under Delaware law, a claim for negligent infliction of emotional distress requires: (1) negligent conduct that proximately causes emotional distress; and (2) the emotional distress is accompanied by non-transitory, recurring physical phenomena. *Greene v. U.S. Postal Serv.*, 462 F. Supp. 2d 578, 580 (D .Del. 2006) (citing *Lupo v. Med. Ctr. of Del., Inc.*, 1996 WL 111132, at *3 (Del. Super. 1996)). Considering that plaintiff provides no specific conduct by defendant Skinner or Protz, this claim is dismissed.

## Q. Counts Thirty-Three to Thirty-Five

Plaintiff asserts an abuse of process claim by defendants Skinner and Protz in count thirty-three. (D.I. 1 at ¶¶ 333-343) The elements a plaintiff must prove in an abuse of process claim in Delaware are: "(1) an improper or wrongful purpose in using

---

[25]Plaintiff alleges that "all defendants, at all times were guilty of AT LEAST gross negligence, in every count." (D.I. 1 at ¶¶ 289, 294 (emphasis in original))

legal process; and (2) a willful act in the use of the system not proper in the regular conduct of legal proceedings." *Adams v. Aidoo*, 2012 WL 1408878, at \*13 (Del. Super. 2012). The court finds that plaintiff has failed to state a claim because the legal proceedings were not improper, in fact, plaintiff pled guilty to one of the charges (resisting arrest) and pled no contest (lewdness) to another.

In count thirty-four, plaintiff contends that defendants Protz and Skinner were part of a conspiracy to arrest, detain, and confine plaintiff without probable cause and maliciously charge and prosecute him for crimes. (D.I. 1 at ¶¶ 344-350) Under Delaware law, civil conspiracy requires: "(1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *Digene Corp. v. Ventana Medical Systems, Inc.*, 476 F. Supp. 2d, 446 (D. Del. 2007). "Civil conspiracy is not an independent cause of action in Delaware, but requires an underlying wrong which would be actionable absent the conspiracy." This count is appropriate for dismissal because plaintiff has not stated an actionable underlying wrong.

Plaintiff alleges a claim for tortious interference against defendants Protz and Skinner. Plaintiff contends that defendant Protz wanted to disrupt a beneficial business relationship between plaintiff and his former employment in order to frame plaintiff. Defendants Protz and Skinner visited plaintiff's place of employment, requesting immaterial documents and criminalizing him, resulting in the plaintiff's termination.

To succeed on a claim for tortious interference with prospective business relations, a plaintiff must prove: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c)

31

proximate causation, and (d) damages." *Images Hair Solutions Medical Center v. Fox Television Stations, Inc.,* 2016 WL 425158, at \*4 (Del. Super 2016). The court finds plaintiff has not adequately pled facts to support the elements required to prove a claim for tortious interference.

## V. CONCLUSION

For the foregoing reasons, defendants City of Wilmington and state defendants' motions to dismiss are granted.[26] The motions to dismiss filed by Newark and UD defendants are granted in part and denied in part. An appropriate order shall issue.

---

[26]Plaintiff's motions for entry of default are denied as moot. (D.I. 96, 156) Plaintiff's motion to seal all pleadings that indirectly or directly reference his expunged record is denied. (D.I. 174)