IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JASON W. GRUBBS,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                ) Civ. No.15-195-SLR
                                        )
CPL. JAMES MARCONI, et al.,             )
                                        )
            Defendants.                 )

---

Jason W. Grubbs, Plaintiff, Avondale, Pennsylvania, pro se.

Richard D. Abrams, Esquire and Daniel P. Bennett, Esquire of Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, Wilmington, Delaware.  Attorneys for Defendants James Marconi, Greg D'Elia, Andrew Rubin and James Skinner.

James Darlington Taylor, Jr., Esquire, Allison Jean McCowan, Esquire and Dawn Kurtz Crompton, Esquire, of Saul Ewing LLP, Wilmington, Delaware.  Attorneys for Michael Jon Maier, Jay Protz and Sean Hogan.

---

## MEMORANDUM OPINION

Dated:  February , 2017
Wilmington, Delaware

ROBINSON, Senior District Judge

## I. INTRODUCTION

On March 2, 2015, pro se plaintiff Jason W. Grubbs ("plaintiff") filed this action against thirty-five different individuals and entities for claims revolving around his arrest and prosecution. (D.I. 1) The complaint alleges civil rights violations pursuant to 42 U.S.C. §§ 1983, 1985 and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and asserts violations of Delaware state law, including claims of false arrest, false imprisonment, assault, battery, defamation, invasion of privacy, negligent publication, gross negligence, malice, negligent infliction of emotional distress, malicious prosecution, abuse of process, conspiracy, and tortious interference. Many of the counts and defendants were dismissed upon defendants' motions. (D.I. 184, 185)

Pending before the court are fully briefed motions for protective orders filed by plaintiff, cross motions for summary judgment filed by plaintiff and remaining defendants, and a motion for discovery filed by plaintiff. (D.I. 195-200, 205-207, 212-216, 218, 219, 221-227, 230-232) The court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

The allegations in the unverified complaint are set forth in detail in the court's March 29, 2016 memorandum opinion. (*See* D.I. 184) Counts three, four, five, and six

(raised pursuant to 42 U.S.C. § 1983)[1] and count seventeen (raised pursuant to Delaware law) against Newark Police Department ("NPD") defendants Cpl. James Marconi ("Marconi"), MS/Cpl. Greg D'Elia ("D'Elia"), Sgt. Andrew Rubin ("Rubin"), and detective James Skinner ("Skinner") (collectively "NPD defendants") and University of Delaware Police Department ("UDPD") defendants Sgt. Michael Jon Maier ("Maier"), detective Jay Protz ("Protz") and officer Sean Hogan ("Hogan") (collectively "UDPD defendants") survived defendants' dismissal motions. (D.I. 184, 185) After the court ruled on defendants' motions to dismiss, it entered a scheduling and discovery order on March 31, 2016, that set a discovery deadline of October 3, 2016, and a dispositive motion deadline of November 4, 2016. (D.I. 186)

Discovery commenced and, on April 13, 2016, plaintiff filed a motion for a protective order from unwarranted discovery from defendants and a motion for summary judgment. (D.I. 195, 197) Plaintiff filed a second motion for a protective order on May 4, 2016. (D.I. 212) Plaintiff did not respond to any of defendants' discovery requests or provide defendants any discovery. Defendants responded to interrogatories served upon them by plaintiff. (D.I. 208-211, 217, 233) Defendants filed motions for summary judgment on November 4, 2016 and, approximately one month later, plaintiff filed a motion for submission of new evidence. (D.I. 221, 222, 230)

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

## B. Facts Presented by the Parties[2]

On April 20, 2013, at around 10:45 p.m., NPD and UDPD officers responded to a

complaint of a naked man exposing himself to two female victims in the area of Beverly

Road in Newark, Delaware. (D.I. 198, ex. C; D.I. 223, ex. 1) A perimeter was set up,

the NPD initiated a K-9 track in the area, and officers operated as mobile units in

vehicles and on foot. (D.I. 198, ex. C) Marconi and Maier saw an individual matching

the description provided by the victims (later identified as plaintiff) hiding in a group of

bushes and trees. (D.I. 198, ex. C; D.I. 223, exs. 1, 4) Plaintiff, who emerged from the

bushes and trees, fled on foot; he was pursued by Marconi and Maier, who were also

on foot. (*Id.*) When Maier saw plaintiff, he shouted "hey," and plaintiff began running.

(D.I. 223, ex. 4) Maier pursued plaintiff and announced "police stop," but plaintiff

continued to run. (*Id.*) Plaintiff was apprehended by Marconi and Maier while he was

attempting to climb a fence. (D.I. 198, ex. C; D.I. 223, exs. 1, 4) Maier was holding

onto plaintiff's leg while the rest of plaintiff's body was on the other side of the fence.

(D.I. 198, ex. C) Marconi grabbed plaintiff by his shoulders and physically pulled

plaintiff back over to the side of the fence causing all three to fall to the ground. (*Id.*) In

pulling plaintiff back over the fence, one of the fence pickets broke. (D.I. 208-211)

Maier handcuffed plaintiff. (D.I. 223, ex. 4) Marconi and Maier placed plaintiff

---

[2]Plaintiff did not submit any affidavits to support his motion for summary judgment or in opposition to defendants' motions for summary judgment. In addition, his complaint is neither sworn nor verified. *See Egli v. Stevens*, 1993 WL 153141 at *8 n.6 (E.D. Pa. May 11, 1993) (for pro se plaintiff, where "neither [the] complaint nor his response to defendants' motion for summary judgment contain[ed] a verification," court could "treat neither as if it were an affidavit"), *aff'd*, 17 F.3d 1429 (3d Cir. Jan. 3, 1994) (table). Plaintiff relies upon police reports, transcripts, photographs, and records from the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware.

3

into custody with no further resistence, and plaintiff was placed in a NPD patrol unit. (*Id.*) Maier denies striking plaintiff on the ankle or stomping on his ankle. (D.I. 223, ex. 1) Maier states that he did not deploy or have a police K-9 under his control during the arrest and did not permit or otherwise cause a police K-9 to bite plaintiff's thigh. (D.I. 223, ex. 1) Maier asked plaintiff if he was hurt, and plaintiff did not complain of injuries. (D.I. 198, ex. C, D.I. 223, ex. 1) Police reports prepared by the NPD and UDPD make no mention that plaintiff complained of injuries. (D.I. 191, ex. C; D.I. 223, exs. 1, 4)

Marconi called out that the suspect was in custody and D'Elia responded to the area to assist. (D.I. 198, ex. C) During this time, Rubin contacted the victims and transported them to the area to conduct a show-up. (D.I. 198, ex. C) Following the show-up, plaintiff was placed in a NPD police car and transported to the NPD precinct for processing, questioning and detention. (D.I. 198, ex. C; D.I. 223, ex. 2) Plaintiff was questioned by NPD detective Skinner and UDPD detective Protz.[3] (*Id.*) According to Skinner's report, plaintiff stated that he went for a run in the area and, when he saw uniformed police, he fled because he had marijuana inside his vehicle and he was afraid. (D.I. 198, ex. C) Plaintiff did not complain of any injuries or request any medical care when he was interviewed by Protz. (D.I. 223, ex. 2)

---

[3]Protz was not present when plaintiff was arrested. (D.I. 223, ex. 2) He denies striking plaintiff on the ankle or stomping on his ankle and states that he did not deploy or have a police K-9 under his control during plaintiff's detention and did not permit or otherwise cause a police K-9 to bite plaintiff's thigh. (*Id.*)

4

Plaintiff was charged with sixteen criminal counts including lewdness, resisting arrest and indecent exposure for a total of six incidents dating to 2011. (D.I. 141, exs. A, B) Plaintiff agreed to plead guilty to one count of resisting arrest and no contest to one count of lewdness in exchange for probation before judgment. (D.I. 141, ex. C) The remaining counts were nolle prossed. (*Id.*)

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be--or, alternatively, is--genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the

6

nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The judge must ask not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252. The court must not engage in the making of "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" as these "are jury functions, not those of a judge, [when] [] ruling on a motion for summary judgment." *E.E.O.C. v. GEI Group, Inc.*, 616 F.3d 265, 278 (3d Cir. 2010) (citation omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. at 247-48. "If the evidence is merely colorable, or

7

is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

Plaintiff moves for summary judgment on the grounds that "there is no conceivable way for defendants to mount a meritorious defense in light of the evidence being brought forth by plaintiff." (D.I. 197, 198) NPD defendants move for summary judgment on the grounds that plaintiff cannot meet his burden of proof with respect to the claims against them. (D.I. 221) UDPD defendants move for summary judgment on the grounds that: (1) plaintiff's claims fail as a matter of law; and (2) the undisputed facts support the propriety of the UDPD defendants' actions. (D.I. 222, 223)

## IV. DISCUSSION

### A. Count Three, Excessive Force

"[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

8

*Id.* at 397; *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004); *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Plaintiff alleges the use of excessive physical force. Because the determination of whether the use of force is reasonable is a fact specific inquiry, courts have reached different results depending upon the facts and circumstances of each case. *See Pridgen v. Law*, 299 F. App'x 211 (3d Cir. 2008) (unpublished) (evidence insufficient to show that arresting officers used unreasonable or excessive force in arresting suspect; although suspect sustained bloody nose during the arrest, evidence showed that suspect resisted arrest, tried to flee, and during the struggle, officers and suspect fell on an overturned couch, causing suspect to hit his head on the floor); *Bender v. Township of Monroe*, 289 F. App'x 526 (3d Cir. 2008) (unpublished) (genuine issues of material fact precluded summary judgment on whether police officers retaliated and used excessive force against an arrestee by beating him while handcuffed, hitting him in the face with a flashlight, and breaking his cheekbone, because arrestee had kicked an officer); *Davis v. Bishop*, 245 F. App'x 132 (3d Cir. 2007) (unpublished) (no excessive force by police officers in handcuffing and subduing arrestee who was intoxicated,

disobeyed officer's orders to attempt to perform a field sobriety test and get off the hood

of the police car, and eventually kicked out the rear window of the police cruiser;

although officer admitted to having flung arrestee off the car, officers were confronted

with an uncertain situation with an individual who was uncooperative); *Feldman v.*

*Community Coll. of Allegheny*, 85 F. App'x 821 (3d Cir. 2004) (unpublished) (no

excessive force by police officers when arresting college student even if, as student

alleged, officers wrestled student to the ground and kicked him in the head, when the

student resisted arrest and actively struggled with officers when they attempted to

remove him); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1257 (11th Cir. 2000) (no excessive

force where officer grabbed plaintiff from behind, threw him against a van three or four

feet away, kneed him in the back, pushed his head into the side of the van, and

searched his groin in an uncomfortable manner).

      The reasonableness of defendants' conduct in their use of force is measured by

"careful attention to the facts and circumstances" of this case. *See Graham*, 490 U.S.

at 396. The facts before the court are that plaintiff matched the description of an

individual who had been reported to the police as exposing himself to two individuals. It

is undisputed that when plaintiff saw the uniformed officers, he ran. Indeed, when he

was questioned, he admitted fleeing when he saw uniformed officers because he had

marijuana in his vehicle. It is also undisputed that plaintiff continued to flee, despite the

presence of at least one police officer and a command to stop. It was not until plaintiff

was unable to clear a fence that plaintiff stopped. The force used by defendants was to

hold onto plaintiff so that he would not continue to flee and then to pull plaintiff (as well

as both officers) over to one side of the fence and onto the ground. Of note is that plaintiff pled guilty to resisting arrest.

In addition, the evidence of record does not support plaintiff's claim that defendants injured plaintiff's ankle. Plaintiff presented no evidence to support this claim, while UDPD defendants (including arresting officer Maier) submitted affidavits denying that they struck plaintiff's ankle. Notably, when plaintiff was seen by medical at the HRYCI, he did not complain or make mention of an ankle injury. Finally, plaintiff complained to medical at the HRYCI that he was bitten by a dog. While there is evidence that a K-9 track was started, there is no evidence of record that any of the named defendants were part of the K-9 track or that they had a police K-9 under their control at the time that plaintiff was allegedly bitten.[6]

The facts and circumstances of plaintiff's arrest, as described by defendants, are not disputed with competent proof by plaintiff. Even when viewing the facts in the light most favorable to plaintiff, it is undisputed that plaintiff ran from officers and continued to flee even after he was commanded to stop. Keeping in mind that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation," the court concludes that the force used by defendants was objectively reasonable to gain control of the situation. *See Graham*, 490 U.S. at 397. A

---

[6]The medical records refer to a wound puncture and a small ecchymosis at the groin, but do not describe the area as a dog bite wound. (D.I. 200, ex. B) The court viewed photographs of plaintiff's injuries submitted in support of his motion for summary judgment. (D.I. 199, ex. A) It is more likely that plaintiff sustained the puncture wound when he attempted to hurdle the picket fence.

reasonable jury could conclude that the force used was reasonable given the conduct of plaintiff.

For the above reasons, the court finds that any force that may have been applied does not rise to the level of a constitutional violation. Therefore, the court will grant defendants' motion for summary judgment and will deny plaintiff's motion for summary judgment as to the excessive force claim.

### B. Count Four - Failure to Protect

"Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651. For liability to attach under § 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene. *Id.* at 651.

If there is no excessive force, then there is no corresponding duty to intervene. *See Nifas v. Coleman*, 528 F. App'x 132, 136 (3d Cir. 2013) (unpublished) ( "Because we find that no constitutional violation occurred with respect to excessive force, Nifas also cannot succeed on his failure-to-intervene claims."). As discussed above, defendants' actions during plaintiff's arrest were reasonable and did not violate plaintiff's constitutional rights with regard to plaintiff's excessive force claims.

Accordingly, the failure to protect claims fail as a matter of law.  Therefore, the court will grant defendants' motion for summary judgment and will deny plaintiff's motion for summary judgment as to the failure to protect claims.

### C. Count Five - Medical Needs

Deliberate indifference to the medical needs of an arrestee violates his Fourteenth Amendment right to due process.  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Groman v. Township of Manalapan*, 47 F.3d 628, 636-37 (3d Cir. 1995). To demonstrate deliberate indifference to medical needs, a plaintiff must show "(i) a serious medical need, . . . (ii) acts or omissions by [law enforcement] officials that indicate deliberate indifference to that need," *Natale*, 318 F.3d at 582, and (iii) a causal connection between the indifference and the plaintiff's injury.  *Miller v. City of Phila.*, 174 F.3d 368, 374 n.5 (3d Cir. 1999).  "Deliberate indifference exists where there is objective evidence that a plaintiff had serious need for medical care and the need was ignored or delayed for non-medical reasons.  *See Smith v. Gransden*, 553 F. App'x 173, 177 (3d Cir. 2014) (unpublished) (citations omitted).  Hence, plaintiff must show that defendants knew of the risk to him and disregarded it and that such acts or omissions caused plaintiff injury.  *See id.*

There is no evidence of record that any named defendant was aware that plaintiff had a serious need for medical care.  Plaintiff was asked repeatedly if he was injured, plaintiff did not complain of injuries, and he did not request medical care.  While plaintiff was in Hogan's custody, Hogan stated that plaintiff had no visible injuries,

13

plaintiff did not appear to be in distress, and plaintiff did not request medical attention. Upon screening at the HRYCI, plaintiff indicated only that he had bruising and, once there, he received medical treatment at 7:45 p.m., less than 24 hours following his April 21, 2013 11:00 p.m. arrest.

The evidence of record does not support a finding of deliberate indifference to plaintiff's medical needs and, therefore, the court will grant defendants' motion for summary judgment and will deny plaintiff's motion for summary judgment as to this issue.

### D. Count Six - Special Relationship Doctrine

Generally, a state actor has no affirmative duty to protect an individual from the acts of a private third party. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997) (citations omitted). However, an affirmative duty may arise out of certain special relationships between the State and particular individuals. *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013). For example, when the State holds an individual in custody against his will, the Constitution imposes upon the State a corresponding duty to assume some responsibility for the individual's safety and general well-being. *Id.* The duty to protect does not emanate from the State's knowledge of the individual's predicament or an expression of intent to assist, but from the restraints the State imposes on the individual's ability to act on his own behalf. *Kingsmill v. Szewcxak*, 117 F. Supp. 3d 657, 663-664 (E.D. Pa. 2015). A breach of the duty created by the special relationship occurs when "the state, 'under sufficiently culpable circumstances, [fails] to

14

protect the health and safety of the citizen." *D.R. v. Middle Bucks Area Vocational Tech. Sch.* 972 F.2d 1364, 1369 (3d Cir. 1992).

In determining the applicability of the special relationship doctrine, the court first determines whether plaintiff has alleged a protected interest and a sufficient relationship with defendants to state a cause of action. *Nicini v. Morra*, 212 F.3d 798, 809 (3d Cir. 2000). Next, the court must determine whether the alleged violation amounted to a violation of plaintiff's constitutional rights. *Id.* In doing so, the court must identify the "level of conduct egregious enough to establish a constitutional violation," and determine whether there is sufficient evidence to establish that defendants' conduct rose to that level. *Id.* For the conduct to amount to a constitutional violation, it must be so egregious as to shock the conscience. *Id.* at 810. In order to shock the conscience with respect to non-emergency decisions, defendants must have acted with deliberate indifference. *Id.*

Under the special relationship doctrine, the court uses a substantive due-process claim analysis to establish State actors' liability for the acts of non-governmental or private third parties. *See e.g.*, *Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 276 (10th Cir. 1996) (discussing theory whereby State actors may be liable for the acts of private third parties). In the instant case, plaintiff's claim that defendants violated the special relationship doctrine fails as a matter of law, given there is no evidence that private thirty party individuals (*i.e.*, non-governmental actors) harmed plaintiff.

Alternatively, even if the doctrine were applicable, on the unopposed facts before the court, defendants did not place plaintiff in any danger when they attempted to arrest

him since, as discussed above, the force used was necessary and reasonable to effectuate plaintiff's arrest. Moreover, as discussed above, defendants were not deliberately indifferent to plaintiff's medical needs. Defendants did not create a dangerous environment nor did they breach any duty owed to plaintiff.

Based upon the foregoing, the court will grant defendants' motion for summary judgment as to special relationship doctrine claim. The court will deny plaintiff's motion for summary judgment

### E. Count Seventeen - Assault and Battery

In count seventeen, plaintiff raises a State assault and battery claim when he alleges conduct by Maier, Marconi, Rubin and D'Elia caused injury to his ankle and thigh. Having determined that summary judgment is appropriate as to plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over plaintiff's State law claims for assault and battery.[7] *See* 28 U.S.C. § 1367(c); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-640 (2009) (once district court grants summary judgment on federal cause of action, it is appropriate for court to exercise its discretion to determine whether to retain supplemental jurisdiction over remaining State law claim).[8]

---

[7]The court further notes that the evidence of record does not support plaintiff's State claims. Plaintiff did not identify the unknown officer or officers who allegedly were responsible for the ankle injury or alleged dog bite.

[8]The court notes that the parties were not diverse at the time the complaint was filed given plaintiff's and three news outlet defendants' common Pennsylvania domicile. Diversity of citizenship is established by the "facts that existed at the time the complaint was filed." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009).

## V. CONCLUSION

For the above reasons, the court will: (1) deny as moot plaintiff's motions for protective order from unwarranted discovery (D.I. 195, 212); (2) deny plaintiff's motion for summary judgment (D.I. 197); (3) grant the motion for summary judgment filed by defendants James Marconi, Greg D'Elia, Andrew Rubin and James Skinner (D.I. 221); (4) grant the motion for summary judgment filed by defendants Sean Hogan, Michael Jon Maier and Jay Protz (D.I. 222); (5) deny as moot plaintiff's motion for submission of new evidence (D.I. 230); and (6) decline to exercise supplemental jurisdiction over plaintiff's State law claims.

A separate order shall issue.